Filed 9/30/14  Vitale v. Central Mortgage Co. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DEBORAH CAMILLE VITALE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CENTRAL MORTGAGE COMPANY et al.,<br><br>    Defendants and Respondents. | A138734<br><br>(Marin County<br>Super. Ct. No. CIV1000331) |

Deborah Vitale appeals from a summary judgment in favor of Central Mortgage Company (Central) and Mortgage Electronic Registration Systems, Inc. (MERS), beneficiaries of a deed of trust secured by and foreclosed against her Novato property. The trial court correctly found there were no triable issues of  material fact, and we affirm.

**BACKGROUND**

In December 2006, Vitale obtained a loan for $858,650 from Residential Mortgage Capital (Residential) secured by a deed of trust on her property.  The deed of trust named MERS as Residential's nominee beneficiary and assigned MERS the right to exercise all interests granted by Vitale under the deed of trust in favor of the lender and the lenders successors and assignees.  The note was subsequently transferred into a securitization trust pursuant to a pooling and service agreement.

Vitale defaulted on her mortgage payments, and on July 9, 2009 Old Republic Default Management Services (Old Republic), as agent for the beneficiary, recorded a

1

notice of default and election to sell under the deed of trust. An assignment of deed of trust assigning all beneficial interest from MERS to Central Mortgage Company was executed on July 21. That same day, Central executed a substitution of trustee naming Old Republic as trustee. A notice of trustee's sale was recorded on January 11, 2010.

Vitale sued Central, MERS, and Old Republic. Following rulings on two demurrers and a motion for judgment on the pleadings, Central and MERS (defendants) moved for summary judgment on Vitale's remaining causes of action for a judicial declaration that defendants lacked standing to foreclose "due to fraud, deceit, forgery, failed assignments and other fatal flaws in the chain of title" resulting from the securitization of the note, breach of the implied covenant of good faith and fair dealing, quiet title, injunctive relief, and unlawful business practices.

The trial court granted summary judgment. It explained: "Plaintiff fails to raise a triable issue of material fact under the first cause of action for declaratory relief, which basically amounts to an attack [on] the 'Securitization Process' and the MERS system. [Citation.] A key component of plaintiff's claim that defendants lack standing to foreclose is that MERS cannot be a true 'Beneficiary' because MERS lacks any beneficial interest in the Note, which was separated from the Deed of Trust in the securitization process, and that any actions taken under the Deed of Trust (without the note) are void. As defendants correctly point out in their motion, California's statutory non-judicial foreclosure scheme does not require that the foreclosing party have a beneficial interest in or physical possession of the note. (*Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 440–441; *Lane v. Vitek Real Estate Indus. Group* (E.D.Cal 2010) 713 F.Supp.2d 1092, 1099 [California 'does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.'] Civil Code § 2924(a)(1) permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.' "

The court rejected Vitale's contention that her cause of action for declaratory relief was based on a " 'fatal break in the chain of title where the true owner of the note is now unknown.' " Her contention was purportedly supported by the declarations of a mortgage

2

securitization auditor and a professor of finance that the assignment of the deed of trust from MERS to Central while the note was held in a securities trust broke the chain of title and invalidated the security instrument. The court explained the chain of title was not broken: "MERS is designated as the beneficiary in the original [deed of trust], acting as 'nominee' for the lender, and is granted the authority to exercise legal rights of the lender. The Notice of Default in this case was recorded by Old Republic acting 'as Agent for the Beneficiary,' identified as MERS. Thereafter, MERS assigned its interest under the [deed of trust] to Central, which substituted Old Republic as Trustee, which is the party currently proceeding with the foreclosure. Defendants provide evidence of a clear chain of title from MERS to Central and there are no third party strangers involved in the foreclosure proceeding." Nor, the court observed, had plaintiffs adduced evidence that there were third parties claiming a right to foreclose, which the court considered "highly suspect given the fact that plaintiff has been in default on the Note *since 2009* and no party other than MERS/Central has come forward to date to attempt to foreclose on the property."

The court found Vitale failed to show any evidence to support her claim that she has standing to challenge the foreclosure "based on 'specific facts' showing a *serious* problem" with defendants' title. It also ruled that, as a nonparty to the MERS pooling and service agreement, Vitale lacked standing to challenge the assignment of the note based on defendants' alleged failure to comply with its terms. The court ruled that no cause of action for breach of the implied covenant of good faith and fair dealing arises from alleged noncompliance with the statute governing notice of default (Civ. Code, §2923.5). It further ruled Vitale's remaining causes of action for quiet title, injunctive relief and unfair business practices were derivative of and failed with her claim that defendants could not pursue nonjudicial foreclosure unless they were in possession of the original note, and that Vitale had failed to allege tender as required to maintain an action for quiet title.

Vitale filed this timely appeal.

3

## DISCUSSION

Preliminarily, it was very difficult to discern from Vitale's briefing the precise nature of her arguments. She asserts there are "innumerable hotly contested material facts to be addressed," which she believes should have precluded summary judgment. But she does not identify what those facts are, and this court will not independently search the record for error. (See, e.g., *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466 fn. 6.) Instead, what emerges from a determined reading of her arguments are largely legal, not factual, assertions. We have attempted to distill her contentions from the morass of briefing before us and address them on the merits.

### I. Legal Standards On Summary Judgment

" 'To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]. [Citation.] The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." [Citation.] [¶] . . . The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. [Citation.] . . . Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is any triable issue of fact as to any essential element of a cause of action.' " (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485 (*Ochoa*), some brackets and ellipses added.)

"In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. [Citation.] The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law." (*M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 703–704.) "We accept as true the facts alleged in the evidence of the party opposing summary judgment and the

4

reasonable inferences that can be drawn from them. [Citation.] However, to defeat the motion for summary judgment, the plaintiff must show ' "specific facts," ' and cannot rely upon the allegations of the pleadings." (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805.) "While '[s]ummary judgment is a drastic procedure, should be used with caution [citation] and should be granted only if there is no issue of triable fact' [citation], it is also true '[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one.' " (*M.B. v. City of San Diego, supra,* at p. 704.)

## II. Analysis

As we understand them, Vitale's primary claims generally concern alleged deficiencies in the securitization process. Specifically, she seems to allege that the assignment of the deed of trust to Central was invalid because the note was in the securitized trust when the deed of trust was assigned; that it was not validly transferred to the securitized trust; and that the substitution of Old Republic as trustee was invalid. Vitale also asserts the court erred when it ruled that she lacks standing to challenge the allegedly improper transfers during the securitization process.

Having carefully reviewed the record and briefs, we agree with the trial court's ruling. Vitale's claims seem, for the most part, to be premised on her belief that the transfers of interest in the note and deed of trust were improper because they were in violation of provisions of the securitized trust's pooling and servicing agreement. But such claims do not support a right to challenge a foreclosure in court. "[E]ven if the asserted improper securitization (or any other invalid assignments or transfers of the promissory note. . .) occurred, the relevant parties to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note.' [Citation.] *As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks*

5

*standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions.*" (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 514–515, italics added.)

Moreover, a plaintiff asserting wrongful foreclosure is required to show that the alleged imperfection in the foreclosure process was prejudicial to his or her interest. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 (*Fontenot*); *Herrera  v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86, fn. 4 (*Knapp*).)  "A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure and the resulting prejudice.' " (*Knapp, supra,* 123 Cal.App.4th. at p. 86, fn. 4.) Here, as in *Fontenot*, *supra*, Vitale has neither alleged nor identified any harm that she suffered as a result of some defect or defects in the securitization process.  (198 Cal.App.4th at p. 272.)  For both of these reasons, Vitale has not established standing to pursue this action.

Vitale contends that *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, supports her claim of standing to challenge foreclosure based on alleged deficiencies in the securitization process and, specifically, on "the pooling and servicing agreement methods of MERS."  We disagree.  As recently noted in *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, "*Glaski*'s reasoning relies on two federal Court of Appeal cases interpreting the law of other jurisdictions and an unpublished federal district court case.  [Citations.] [¶]*California cases hold, however, that even in post-foreclosure actions a borrower lacks standing to challenge an assignment absent a showing of prejudice.*" (*Id.* at p. 1207, italics added; see *In re Sandri* (Bankr. N.D.Cal. 2013) 501 B.R. 369, 374 ["*Glaski* is inconsistent with the majority line of cases and is based on a questionable analysis of New York trust law"]; *Rajamin v. Deutsche Bank Nat. Trust Co.* (2nd Cir. 2014) 757 F.3d 79, 90 [rejecting *Glaski* as inconsistent with New York and other courts' interpretation of New York law]; *Apostol v. CitiMortgage, Inc.* (N.D.Cal. 2013) 2013 WL 6328256 *7 ["courts in this District have expressly rejected *Glaski* and adhered to the

6

majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process"].) *Keshtgar* and the weight of authority definitively refute Vitale's assertion that "[t]he banks are just trying to improperly marginalize *Glaski* as a minority rule by artificially manufacturing the mirage that there is a 'split of authority.' "

Vitale's remaining causes of action are also fatally inadequate. Her appellate briefing fails to elucidate, or identify evidence that supports, her claim that triable issues of material fact preclude summary judgment on her claim for breach of the implied covenant of good faith and fair dealing. Instead, she relies solely on the unelaborated and unsupported assertion that "[f]rom the disputed material facts (which Plaintiff/Appellant can prove) these implied contacts were breached by **tortious** conduct of the Defendant Respondent." But "[o]nce the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is any triable issue of fact . . . ." (*Ochoa, supra*, 61 Cal.App.4th at p. 1485.) Vitale has not done so. Her additional contentions, including arguments concerning the Homeowners Bill of Rights (HBOR) (Assem. Bill No. 278 (2011–2012 Reg. Sess.); Sen. Bill No. 900 (2011–2012 Reg. Sess.)) and Business and Professions Code section 17200 were raised in Vitale's reply brief for the first time, and are therefore deemed waived.[1] (See *Granite Construction Co. v. American Motorists Ins. Co*. (1994) 29 Cal.App.4th 658, 667, fn. 8.) In summary, Vitale has not shown the existence of any material issues of fact that preclude judgment in favor of Central and MERS. Summary judgment was properly granted.

**DISPOSITION**

The judgment is affirmed.

---

[1]Moreover, HBOR did not become effective until January 1, 2013 (*Alvarez v. BAC Home Loans Servicing, L.P*. (2014) 228 Cal.App.4th 941, 950), long after the transactions concerned here.

_____
Siggins, J.

We concur:

_____
Pollak, Acting P.J.

_____
Jenkins, J